IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-00466-ZLW-BNB

JAMES RALPH DAWSON, JR.,

Plaintiff,

v.

THE COLORADO DEPARTMENT OF CORRECTION EX REL AL ESTEP,
SHANE JOHNSON,
JOHN BOWKER,
ENDRE SAMU, and
DANY ADAMS,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion for Partial Summary Judgment** (the "Motion"), filed April 21, 2005. I respectfully RECOMMEND that Motion be GRANTED.

## I. STANDARD OF REVIEW

The defendants seek (1) dismissal of the claims against the Colorado Department of Corrections ("DOC") for lack of subject matter jurisdiction, and (2) summary judgment on the claims against defendants Estep, Samu, and Adams. The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by

affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing that there is a genuine issue for trial. Id. at 324.

In addition, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.  UNDISPUTED MATERIAL FACTS[1]

1.  The plaintiff is currently incarcerated by the DOC at the Limon Correctional Facility ("LCF"). *Motion*, p. 2, ¶ 1; *Complaint*, p. 2, ¶ 1. Defendant Estep was the Associate Warden at LCF at all times pertinent to the allegations of the Complaint. *Motion*, p. 2, ¶ 2; *Complaint*, p. 4. Defendants Bowker and Johnson were corrections officers at LCF at all relevant times. *Motion*, p. 2, ¶¶ 3-4; *Complaint*, p. 4.

2.  In May 2002, and again in October and November 2002, the plaintiff filed grievances alleging that he was being discriminated against because he did not have a job. *Motion*, p. 2, ¶ 5 and Exhibit A-1. The plaintiff's grievances were denied on the grounds that there were jobs available at LCF to inmates who wished to accept them, and there was no legally recognizable discrimination. *Motion*, p. 2, ¶ 5 and Exhibit A-1, p. 5.

3.  The plaintiff states that Estep "is the L.C.F. warden responsible for knowing everything that transpires in the prison." *Motion*, Exhibit A-2, p. 1, Answer to No. 5. The plaintiff wrote a letter to Warden Estep about the job situation. The plaintiff met with Estep in October 2002, and Estep interviewed him about the problem. He informed the plaintiff that he

---

[1] The plaintiff does not provide any evidence to create a material fact dispute. Therefore, the undisputed material facts are taken from the defendants' statement of facts with supporting evidence.

had talked to defendant Shane Johnson, a corrections officer, about the problem and hoped to resolve the problem.[2] *Motion*, p. 3, ¶ 7; Exhibit A-2, p. 2, Answer to No. 6.

    4. Three days later, defendant Bowker called the plaintiff into his office and told him that Johnson wanted the plaintiff to put in writing a proposed agreement that he would not file any more grievances or legal actions if Johnson would give him a job. The plaintiff put the proposed agreement in writing. Johnson later issued the plaintiff a disciplinary report for bribery. *Motion*, p. 3, ¶¶ 10-12; Exhibit A-2, p. 2, Answer to No. 6 and p. 3, Answer to No. 13.

    5. Defendant Adams, a disciplinary investigator, investigated the incident and prosecuted the report. Defendant Samu, a hearing officer, found the plaintiff guilty of bribery. *Motion*, p. 3, ¶¶ 13-15; Exhibit A-2, p. 2, Answer to No. 6 and p. 3, Answers to Nos. 15, 16. The plaintiff was required to serve ten days in segregation as punishment. *Motion*, Exhibit A-2, p. 2, Answer to No. 6 and p. 3, Answer to No. 15.

    6. The plaintiff appealed the disciplinary action to defendant Estep. Estep provided the following response:

> You were charged with bribery because you attempted to exchange dropping grievance/legal action if given a porters job. [T]he filing of frivolous or too many grievances is dealt with in another manner per D.O.C. policy. The charge and decision was [sic] appropriate.

*Motion*, p. 6, ¶ 28; Exhibit A-2, p. 3, Answer to No. 17.

    The Complaint brings one claim against the defendants for violating his "First Amendment right to petition for grievance by conspiring and retaliating against me by placing me in punitive segregation for filing prison grievances." *Complaint*, p. 4. He seeks punitive and nominal damages and injunctive relief. Id. at p. 8. The plaintiff sues the defendants in their individual and

---

[2]The defendants' evidence does not support their assertion that Estep told the plaintiff to discuss job assignments with Johnson.

official capacities.  Id. at pp. 2-3.

## III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Eleventh Amendment Immunity

The defendants assert that the plaintiff's claim against the DOC must be dismissed because it is barred by Eleventh Amendment immunity.[3]  This is a facial challenge to the Complaint's allegations.  Therefore, I accept the allegations of the Complaint as true.  Holt, 46 F.3d at 1003.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction."  Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).  Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction in suits against a state or state agency either for money damages or for injunctive relief.  Pennhurst State School & Hospital v.

---

[3]The plaintiff names as the first defendant "The Colorado Dept. of Corr. Ex Rel Al Estep." *Complaint*, p. 1.  When describing the parties, the plaintiff refers only to Estep.  Id. at p. 2, ¶ 2. However, when praying for injunctive relief, the plaintiff requests that the DOC stop its employees from retaliating against him.  Id. at p. 8.  Providing the Complaint a liberal construction, I construe the plaintiff's Complaint to name both Estep and the DOC as defendants.

Halderman, 465 U.S. 89, 100 (1984); Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1999). The Eleventh Amendment further precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief; not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06. Thus, the Eleventh Amendment completely bars the plaintiff's claim as against the DOC, and bars the plaintiff's claim as against the remaining defendants in their official capacities insofar as money damages are sought. The claim is not barred against the remaining defendants in their official capacities to the extent the plaintiff seeks prospective injunctive relief.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of the claim against the DOC as barred by Eleventh Amendment immunity. I further RECOMMEND that the claims against defendants Estep, Johnson, Bowker, Samu, and Adams in their official capacities be DISMISSED insofar as the plaintiff seeks monetary relief from them.

### B.  Lack of Personal Participation

Defendants Estep, Samu, and Adams seek summary judgment on the basis that there is no evidence that these defendants personally participated in the alleged constitutional violations.[4] An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his

---

[4] The moving party bears the initial burden of "showing beyond a reasonable doubt that it is entitled to summary judgment." Trainor v. Apollo Metal Specialties, Inc., 318 F3d 976, 979 (10th Cir. 2002). The moving party may carry this burden "either by producing affirmative evidence negating an essential element of the nonmoving party's claim" or, as in this case, by "showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Id.

exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff alleges that the defendants retaliated against him and conspired to retaliate against him for filing grievances. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even if the action taken in retaliation would be otherwise permissible." Id. at 948. An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson v. Shanks, 149 F.3d 1140,1144 (10th Cir. 1998). Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to

7

establish a question of retaliation).

To succeed on a claim for conspiracy to deprive a plaintiff of his constitutional rights, the plaintiff must plead and prove both the existence of the conspiracy and the deprivation of constitutional rights.  Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995).  In pleading the existence of a conspiracy,

> [a] plaintiff . . . need not prove that each participant in a conspiracy knew the exact limits of the illegal plan or the identity of all the participants therein.  An express agreement among all the conspirators is not a necessary element of a civil conspiracy.  The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.  To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences.

Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990).  Conspiracies must often be established with circumstantial evidence since direct evidence of an express agreement among all conspirators is rarely available.  Id.

### 1. Defendant Samu

The plaintiff seeks to hold defendant Samu liable on the basis that he is the hearing officer that found him guilty of bribery and imposed a punishment of ten days in segregation.  *Motion*, Exhibit A-2, p. 1 Answer to No. 5; p. 2, Answer to No. 6; p. 3, Answer to No. 15.  There is no evidence to support a finding that, but for retaliatory motive, Samu would not have found him guilty of bribery.  Nor is there evidence to support a finding that Samu shared a general conspiratorial objective with the other defendants.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of defendant Samu on the plaintiff's claim against him.

### 2. Defendant Adams

The plaintiff seeks to hold defendant Adams liable on the basis that he investigated the case and presented the case against the plaintiff at the hearing. Id. at p. 1, Answer to No. 5; p. 2, Answer to No. 6; p. 3, Answer to No. 16. As with defendant Samu, there is no evidence that Adams directly participated in the alleged retaliation, nor is there evidence that Adams shared a general conspiratorial objective with the other defendants. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of defendant Adams on the plaintiff's claim against him.

### 3. Defendant Estep

The plaintiff seeks to hold defendant Estep liable on the basis that (1) he is the Warden and is "responsible for knowing everything that transpires in the prison"; (2) he interviewed the plaintiff about the job situation after the plaintiff made him aware of it; (3) he told the plaintiff that he had talked to defendant Johnson about the job situation and that he hoped to resolve the problem; (4) three days after his meeting with Estep, Bowker told him that Johnson wanted him to put in writing a proposed agreement that he would not file any more grievances or legal actions if Johnson would give him a job; and (5) Estep responded to the plaintiff's appeal of the disciplinary action, stating that the charge and the decision were appropriate. Id. at p. 1, Answer to No. 5; p. 2, Answer to Nos. 6 and 11; p. 3, Answer to No. 17.

The plaintiff fails to provide any evidence that Estep directly participated in the alleged retaliation. The evidence merely demonstrates that Estep responded to the plaintiff's initial complaint about the job situation and that he responded to the plaintiff's disciplinary appeal. Moreover, there is no evidence that Estep shared a general conspiratorial objective with the other defendants. The connection between Estep and Johnson's alleged actions are tenuous at best. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary

judgment in favor of defendant Estep on the plaintiff's claim against him.

## C. Qualified Immunity

Because I find that summary judgment should enter in favor of Samu, Adams, and Estep, I do not address the defendants' argument regarding qualified immunity. Tonkovich v. Kansas Board of Regents, 159 F.3d 504 n.6 (10th Cir. 1998).

## IV. CONCLUSION

For these reasons, I respectfully RECOMMEND that defendants' Motion for Partial Summary Judgment be GRANTED as follows:

(1) the Complaint be DISMISSED as against the DOC on the basis of Eleventh Amendment immunity; and

(2) summary judgment enter in favor of defendants Samu, Adams, and Estep and against the plaintiff on the plaintiff's claims against them.

I further RECOMMEND that the claims against defendants Estep, Johnson, Bowker, Samu, and Adams in their official capacities be DISMISSED on the basis of Eleventh Amendment immunity insofar as the plaintiff seeks monetary relief from them.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir.

1996).

Dated January 20, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge